**AITKEN AITKEN & COHN**
WYLIE AITKEN (37770)
wylie@aitkenlaw.com
3 MacArthur Pl #800
Santa Ana, CA 92707
Phone:  (714) 434-1424
Fax: (714) 434-3600

**BARRACK, RODOS & BACINE**
STEPHEN R. BASSER (121590)
sbasser@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Phone: (619) 230–0800
Fax: (619) 230–1874

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL G. BRAUTIGAM, Individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>EXPERIAN HOLDINGS, INC.,<br><br>                    Defendant. | CASE NO.:  8:15-cv-1616<br><br><u>CLASS ACTION</u><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

NATURE OF ACTION …………………………………………………………1

      Parties …………………………………………………………………4

      Jurisdiction …………………………………………………………5

FACTS …………………………………………………………………………6

CLASS ACTION ALLEGATIONS …………………………………………...15

      COUNT I ………………………………………………………………18

      COUNT II ……………………………………………………………21

      COUNT III ……………………………………………………………22

      COUNT IV ……………………………………………………………23

      COUNT V ……………………………………………………………24

      COUNT VI ……………………………………………………………25

      COUNT VII …………………………………………………………27

RELIEF REQUESTED …………………………………………………………28

**Class Action Complaint**

Plaintiff Michael G. Brautigam ("Plaintiff"), for himself and all others similarly situated, alleges:

<u>**NATURE OF THE ACTION**</u>

1.       This is a data breach class action brought on behalf of 15 million consumers of T-Mobile US Inc. ("T-Mobile") whose personal information and personal financial information from at least between September 1, 2013 and September 16, 2015 — an astounding period of over two years — was exposed to hackers when Defendant Experian Holdings, Inc. ("Experian") was subject to a data breach (the "Experian data breach").  The hackers stole the personal information and personal financial information of at least 15 million individuals whose information was used to either apply for services or finance the purchase of new devices from T-Mobile.  The personal and financial information obtained by the hackers includes names, addresses, social security numbers, dates of birth, and various other personal identification numbers including passport, driver's license, and/or military identification numbers (collectively "PII").

2.       Defendant's conduct—failing to take adequate and reasonable measures to ensure their data systems were protected, failing to take available steps to prevent and stop the breach from ever happening, failing to disclose to T-Mobile customers that they did not have adequate computer systems and security practices

to safeguard customers' PII, and failing to provide timely and adequate notice of the Experian data breach—has caused substantial consumer harm and injuries to consumers who are customers of T-Mobile across the United States.  In fact, the PII exposed through the Experian data breach has reportedly already been placed on the internet through various websites and is readily available to criminals and identity thieves.

3.    As a result of the Experian data breach, numerous customers of T-Mobile whose PII were contained in the electronic records of Experian have been exposed to fraud and these individuals have been harmed. The injuries suffered by the proposed Class, defined herein, as a direct result of the Experian data breach include:

- theft of their PII;

- costs associated with the detection and prevention of identity theft and unauthorized use of their PII;

- costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the

stress, nuisance, and annoyance of dealing with all issues resulting from the Experian data breach;

- the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII being placed in the hands of hackers;

- damages to and diminution in value of their PII entrusted to T-Mobile and Experian for the sole purpose of obtaining T-Mobile service and/or financing a new device with T-Mobile with the mutual understanding that their PII was safeguarded against theft, access or misuse PII by others; and

- continued risk to their PII, which remains in the possession of Experian and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and members of the Class that remains in their possession.

4.    Hackers obtained the PII of Plaintiff and members of the Class directly from Defendant Experian, which PII had been exposed to hackers through T-Mobile's use of Experian, a company who has a history of failing to adequately protect consumers' personal information.  Recognizing Experian's shameful failings, John Legere, T-Mobile's CEO, issued a statement on the day the Experian

3 – CLASS ACTION COMPLAINT

data breach was disclosed admitting that T-Mobile would belatedly "institute a thorough review of [its] relationship with Experian."[1]

5.     Plaintiff seeks to remedy these harms, and prevent their future occurrence, on behalf of himself and all similarly situated individuals whose PII was stolen as a result of the Experian data breach. Plaintiff asserts claims against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), negligence, breach of implied contract, breach of express contract, and violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (the "UCL").  On behalf of himself and all similarly situated consumers, Plaintiff seeks to recover, among other things, damages, including actual and statutory damages, equitable relief, costs, and reasonable attorney fees.

## Parties

6.     Plaintiff Michael G. Brautigam is a resident of Cincinnati, Hamilton County, Ohio.   Plaintiff would not have given his PII to T-Mobile or Experian had he been informed that Experian lacked adequate computer systems and data security practices to safeguard customers' PII from theft.  Plaintiff received services from T-Mobile and thus his PII was maintained in the Experian data banks that were accessed by hackers without authorization.

---

[1]     http://www.t-mobile.com/landing/experian-data-breach (last visited Oct. 7,

7. Defendant Experian Holdings, Inc., a Delaware corporation, is a citizen of California headquartered at 475 Anton Boulevard, Costa Mesa, CA 92626. Experian operates as an information services company that provides data and analytical tools to its customers around the world through several business lines including credit services, decision analytics, marketing services, and consumer services. As part of its business, and as touted in its annual report, Experian "hold[s] and securely manage[s] incredibly powerful, high-quality data" that "come[s] from many unique data sources [and includes] consumer and business credit, utilities, insurance, rental, healthcare payments and automotive data."[2]

## **Jurisdiction & Venue**

8. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because claims are brought under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*.

9. This Court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and many members of the class are citizens of states different from the Defendant.

---

[2] http://annualreport.experianplc.com/2015/ (last visited Oct. 6, 2015).

5 – CLASS ACTION COMPLAINT

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Experian is headquartered here and regularly transacts business here, and some of the members of the Class reside in this district. The causes of action for the putative Class members also arose, in part, in this District.

## FACTS

*Background*

11.     Data breaches like the Experian data breach at issue here have increased substantially in the last several years.  Being able to protect their personal information and personal financial information has quite possibly never been more important to consumers than it is now.  It is not surprising, then, that Defendant Experian would tout its abilities to protect this personal information in an effort to gain business and, thereby, increase its revenue.

12.     Defendant Experian notes that, as a credit bureau, it acts as "an independent organization that compiles information from credit grantors and other (private and public) sources regarding individuals' credit applications and payment behavior."[3]  As for the security of that information, Defendant Experian promotes its purported ability to keep the information safe by allegedly employing a large number of sophisticated security mechanisms:

_____

[3]      http://www.experian.com/global-credit-bureau/what-is-a-credit-bureau.html (last visited Oct. 6, 2015).

Credit bureau systems are expected to collect and manage highly sensitive data; specific security measures need to be in place to avoid unauthorized access to the bureau databases as well as ensuring that credit information is used in full compliancy with the bureau conduct code and the local data protection legislations. Experian bureau systems host a large number of security mechanisms to control and validate access rights. Sophisticated hardware and software solutions are deployed to enable the Bureau Operator to clearly fulfill international and local security requirements.[4]

13.    In its 2015 Strategic report, Defendant Experian identified "[l]oss or inappropriate use of data" as a "[p]rincipal risk" and a risk that was increasing year-over-year from 2014 given "the intensity of threats companies are facing from cyber attacks, both domestic and foreign."[5]

14.    Addressing this "principal risk," Defendant Experian claimed that it manages the risk by (1) utilizing a "number of defensive and proactive practices" based on "global security policies"; (2) employing a program "of continuous measurement and alerting" that helps Experian "quickly highlight areas of risk in

_____

[4]    *Id.*

[5]    2015 Experian Strategic report, accessible at http://annualreport.experianplc.com/2015/, at 16-17 (last visited October 6, 2015).

our business practices and manage them accordingly"; and (3) having an "enterprise risk management framework" that attempts to "create transparency across layers of management" and "seeks to ensure [Experian has] appropriate oversight of data security, privacy and protection."[6]

15.     Defendant Experian's Chairman, Don Robert, asserted in the Strategic report that "[a]t the heart of our organisation is a strong sense of responsibility and pride that we play a profound, positive role in the lives of millions of people from all backgrounds."[7]  According to Chairman Robert, "we help millions of people each day to improve their financial status, so they are in the best position to get credit in a way that treats them fairly ***and have peace of mind against identity fraud.***"[8]

16.     Defendant Experian, in the privacy policy on its website, states that it "considers itself a steward of the information it collects, maintains and utilizes."[9] Experian also states that it "is held accountable for its information use by consumer privacy expectations and by laws and industry codes established by government entities and industry organizations around the world," and that it complies with a

---

[6]     *Id*.
[7]     *Id*. at 22.
[8]     *Id*. (emphasis added).
[9]     http://www.experian.com/privacy/index.html (last visited Oct. 7, 2015).

variety of laws in the United States including the FCRA.[10]  Finally, Experian claims in its privacy policy that it complies "with all contractual restrictions placed on information provided to Experian."[11]

17.     Defendant Experian has a strong financial incentive to portray itself as having robust mechanisms to detect potential data breaches and the misuse or misappropriation of personal financial information as its Credit Services business line receives 47% of its revenue from customers in North America.  This Credit Services business line is responsible for holding, protecting, and managing data "that helps businesses and organisations to lend fairly, consistently and responsibly, and prevent fraud."[12]

18.     Ironically, Defendant Experian also receives revenue by marketing its supposed expertise in operating as a damage control specialist for companies that have experienced a data breach.  As Experian notes on its website in promoting its "data breach resolution" services, "[w]hen a data breach hits, one wrong maneuver can put you in the path of fines, litigation, customer turnover and brand erosion. Experian Data Breach Resolution is here to steer you through the storm."[13]

---

[10]     http://www.experian.com/privacy/accountability.html (last visited Oct. 7, 2015).
[11]     http://www.experian.com/privacy/information_values.html (last visited Oct. 7, 2015).
[12]     2015 Experian Strategic report, at 8.
[13]     http://www.experian.com/data-breach/data-breach-resources.html (last visited Oct. 6, 2015).

9 – CLASS ACTION COMPLAINT

Experian invites potential customers to "Trust the Power of Experience" by engaging Experian because it is "a leader in data protection with global revenues of $4 billion annually."[14]

19.    What Defendant Experian failed to reveal or inform its customers and consumers was that all of its assurances were illusory, as evidenced by the fact that the PII of Plaintiff and members of the Class were exposed to criminals and identity thieves because Defendant Experian's systems and controls regarding data security were deficient.

**The Experian Data Breach and Fallout**

20.    On October 1, 2015, Defendant Experian announced that it discovered that an unauthorized party had accessed T-Mobile data housed in an Experian server that contained personal information for consumers who applied for T-Mobile USA postpaid services or products that required a credit check from September 1, 2013 through September 16, 2015.

21.    Defendant Experian admitted that the "data acquired included names, dates of birth, addresses, and Social Security numbers and/or an alternative form of ID like a drivers' license number, as well as additional information used in T-

---

[14]    *Id.*

Mobile's own credit assessment."[15]  Defendant Experian stated that it had notified law enforcement and initiated an investigation.

22.     Importantly, while Defendant Experian was aware of the breach as of September 15, 2015,[16] it waited more than two weeks to publicly disclose the breach.  And those potentially affected are being notified by letter, which Experian states should reach them by November 30, 2015, or a full two-and-a-half months after discovery of the breach.[17]  At this point, there is still no mention of the breach on Defendant Experian's website homepage beyond an incredibly small link to a short summary and frequently asked questions that give vague, at best, information about the breach and who may be affected.

23.     The vague answers to the frequently asked questions on Defendant Experian's website also tell consumers that Experian is "providing affected T-Mobile applicants with two years of free credit monitoring and identity resolution services through ProtectMyID."[18]  What the answers fail to disclose is that ProtectMyID is owned and operated by Defendant Experian, so the credit monitoring and identity resolution services are of little value and offer little hope

---

[15]     http://www.prnewswire.com/news-releases/experian-notifies-consumers-in-the-us-who-may-have-been-affected-by-unauthorized-acquisition-of-a-clients-data-300152926.html (last visited Oct. 6, 2015).
[16]     http://www.experian.com/data-breach/t-mobilefacts.html (last visited Oct. 6, 2015).
[17]     *Id*.
[18]     *Id*.

of actual protection for Plaintiff and members of the Class because they are being offered by the company that allowed the PII to be compromised in the first instance.

24.     In response to the revelation of the Experian data breach, T-Mobile CEO John Legere penned a "Letter to Consumers" informing them of the breach.[19] In that letter, Legere stated that the investigation had revealed that the hackers accessed the PII of approximately 15 million people, which represents over 25% of T-Mobile's customers as of June 30, 2015.  Legere also stated that he was "incredibly angry about this data breach" and that T-Mobile would be instituting "a thorough review of [its] relationship with Experian."[20]

25.     On October 1, 2015, Legere himself recognized that the offer of two years of free credit monitoring and identity resolution services through ProtectMyID, owned by Experian, is essentially worthless given Defendant Experian's role in the breach.  On Twitter, in response to others noting concern over this offer, Legere commented that "I hear you re: Experian as service protection option" and that "I am moving as fast as possible to get an alternate option in place by tomorrow."  It is unclear whether Defendant Experian is now offering an alternative.

---

[19]     http://www.t-mobile.com/landing/experian-data-breach.html (last visited Oct. 6, 2015).
[20]     *Id*.

26.     An October 5, 2015 article by Robert McGarvey on TheStreet.com, *Why the Experian-T-Mobile Hack May Bring Financial Doom to Millions*, detailed the extremely serious nature of the breach in comparison with other data breaches and why this breach is especially harmful for those affected, stating in part:

Where this breach gets horrific is in terms of the data that was stolen. A credit card is easy to replace if it is compromised in a breach. Not so what was stolen here. A Social Security number, driver's license number and date of birth are gold to an identity theft criminal and, worse still, that data may not have been encrypted on Experian's server. Said Legere: "Experian has determined that this encryption may have been compromised." Experian had not responded to this reporter's request for comment on Legere's claim.

Even if the data had been encrypted that may not mean safety for victims. "It often is easy to decrypt encrypted data," said [Clay Calvert, director of cybersecurity for MetroStar Systems].

He added that on a scale of 1 to 10 in assessing how bad the damage in a breach is, he counted this a 7. "It's bad," said Calvert.

"This is a bad one," agreed Rurik Bradbury, chief marketing officer at Trustev, an e-commerce security company. "That's the problem for the 15 million. The amount of data is enough to do a lot of damage. Complete identities have been stolen." The data crooks now have in

hand is plenty to open new credit lines, file bogus tax returns, and in

other ways steal identities for profit.

It also is data without an expiration date. A crook could comfortably

wait two years for the credit monitoring to expire then get busy

stealing. Advice from [Robert Siciliano, security expert with

BestIDTheftCompanys.com,] is to sign up for the free credit

monitoring but recognize its limitations, among which is that it does

not prevent identity theft, although it may alert a victim it has

occurred.[21]

27.     The Experian data breach has also attracted the attention of Attorneys

General from at least one state and likely several more in the near future.

Specifically, Reuters has reported that Massachusetts Attorney General Maura

Healey "expects a multi-state probe will be launched into the breach at Experian

Plc that compromised data of some 15 million people who sought to open accounts

with T-Mobile US Inc."[22]  The article noted that both Illinois and Connecticut were

also looking into the breach.[23]

---

[21]     http://www.thestreet.com/story/13312302/1/why-the-experian-t-mobile-hack-may-bring-financial-doom-to-millions.html (last visited Oct. 6, 2015).
[22]     http://www.reuters.com/article/2015/10/02/experian-cyberattack-investigation-idUSL1N1222CC20151002 (last visited Oct. 6, 2015).
[23]     *Id*.

28.     Defendant Experian has a checkered history in safekeeping sensitive and confidential personal data that has made it aware of its substantial risk of experiencing a breach.  Specifically, according to the Privacy Rights Clearinghouse, it appears that, in January 2014, Experian experienced a breach involving access into consumer information without proper authorization[24] and similar incidents occurred sometime between October 19, 2011 and February 13, 2012, as well as sometime between November 2010 and March 2012.[25]

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings all of his claims as class claims under Federal Rule of Civil Procedure 23. The requirements of Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) are met with respect to the Class defined below.

30.     The Plaintiff Class consists of :

**Nationwide**

> All persons in the United States whose personal information was accessed by unauthorized individuals in the data breach announced by Experian and T-Mobile on October 1, 2015 or whose personal information is maintained on Experian's servers.

---

[24]     https://www.privacyrights.org/content/experian (last visited Oct. 6, 2015).
[25]     https://www.privacyrights.org/node/54448 (last visited Oct. 6, 2015).

**Ohio Subclass**

All persons who are domicilliaries of Ohio and whose personal information was accessed by unauthorized individuals in the data breach announced by Experian and T-Mobile on October 1, 2015 or whose personal information is maintained on Experian's servers.

31.     Excluded from the Class are Defendant and its current employees.

32.     The Class is so numerous that joinder of all members is impracticable. The Class includes without limitation approximately 15 million individuals whose PII was compromised by the Experian data breach.

33.     There are numerous questions of law and fact common to Plaintiff and the Class, including the following:

- whether Defendant engaged in the wrongful conduct alleged herein;

- whether Defendant owed a duty to Plaintiff and members of the Class to adequately protect their PII and to provide timely and accurate notice of the Experian data breach to Plaintiff and members of the Class;

- whether Defendant breached its duty to protect the PII of Plaintiff and members of the Class by failing to provide adequate data security and whether Defendant breached its duty to provide timely and accurate notice to Plaintiff and members of the Class;

- whether Defendant knew or should have known that their computer systems were vulnerable to attack;

- whether Defendant Experian's conduct violated the Fair Credit Reporting Act;

- whether Defendant unlawfully failed to inform Plaintiff and members of the Class that it did not maintain computers and security practices adequate to reasonably safeguard PII and whether Defendant failed to inform Plaintiff and members of the Class of the data breach in a timely and accurate manner;

- whether Plaintiff and members of the Class suffered injury, including ascertainable losses, as a result of Defendant's conduct (or failure to act);

- whether Plaintiff and members of the Class are entitled to recover damages; and

- whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief and/or other equitable relief.

34.     Plaintiff's claims are typical of the claims of the Class in that the representative Plaintiff, like all Class members, had his PII compromised in the Experian data breach.

35.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who is experienced in class-action and complex litigation. Plaintiff has no interests that are adverse to, or in conflict with, other members of the Class.

36.     The questions of law and fact common to the Class members predominate over any questions which may affect only individual members.

37.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy.

38.     The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

39.     Defendant has acted on grounds that apply generally to the Class so that injunctive relief under Fed. R. Civ. P. 23(b)(2) is appropriate with respect to the Class as a whole.

## COUNT I – WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT

40.     Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

41.     The FCRA, 15 U.S.C. § 1681a(f), defines a "consumer reporting agency" as:

any person which, for monetary fees, dues, or on a cooperative

nonprofit basis, regularly engages in whole or in part in the practice of

assembling or evaluating consumer credit information or other

information on consumers for the purpose of furnishing consumer

reports to third parties, and which uses any means or facility of

interstate commerce for the purpose of preparing or furnishing

consumer reports.

42.     The FCRA, 15 U.S.C. § 1681a(d)(1), defines a "consumer report" as:

any written, oral, or other communication of any information by a consumer

reporting agency bearing on a consumer's credit worthiness, credit standing,

credit capacity, character, general reputation, personal characteristics, or

mode of living which is used or expected to be used or collected in whole or

in part for the purpose of serving as a factor in establishing the consumer's

eligibility for--

(A) credit or insurance to be used primarily for personal, family, or

household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

19 – CLASS ACTION COMPLAINT

43.    Experian is a consumer reporting agency under the FCRA because it receives monetary fees for regularly engaging in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, including T-Mobile.

44.    The PII of Plaintiff and other members of the Class compromised in the Experian data breach constituted a consumer report under the FCRA because it was a communication of information bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living used for the purpose of serving as a factor in establishing Plaintiff's and others Class members' eligibility for credit.

45.    The FCRA, 15 U.S.C. § 1681e(a), requires consumer reporting agencies like Experian to "maintain reasonable procedures designed to…limit the furnishing of consumer reports to the purposes listed under section 1681b of this title."  Section 1681b does not permit consumer reporting agencies to disclose consumer reports to unauthorized individuals such as hackers and identity thieves.

46.    Defendant Experian willfully and/or recklessly failed to maintain the reasonable procedures necessary for compliance under section 1681b of the FCRA, as evidenced by Experian's prior history of data breaches and its self-professed knowledge of the importance of the ever-increasing risks posed to data security, as set forth herein.

47.     Defendant Experian's willful and/or reckless conduct as detailed herein caused Plaintiff and Class members to be exposed to fraud and be harmed.

48.     The FCRA, 15 U.S.C. § 1681n(a)(1)(A), allows for Plaintiff and members of the Class to recover "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000." Plaintiff and members of the Class are also entitled to punitive damages, costs of the action, and reasonable attorneys' fees, as set forth in 15 U.S.C. § 1681n(a)(2), (3).

## COUNT II – NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT

49.     Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

50.     Defendant Experian was negligent in failing to maintain the reasonable procedures necessary to protect the PII of Plaintiff and members of the Class.

51.     Defendant Experian's negligent conduct provided a means for hackers, identity thieves and other criminals to obtain the PII of Plaintiff and members of the Class for no permissible purpose under the FCRA.

52.     Defendant Experian's negligent conduct as detailed herein caused Plaintiff and Class members to be exposed to fraud and be harmed.

53.     The FCRA, 15 U.S.C. § 1681o(a)(1), allows for Plaintiff and members of the Class to recover "any actual damages sustained by the consumer." Plaintiff and members of the Class are also entitled to the costs of the action and reasonable attorneys' fees, as set forth in 15 U.S.C. § 16810(a)(2).

## COUNT III – NEGLIGENCE

54.     Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

55.     Defendant owed a duty to Plaintiff and members of the Class to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure that Plaintiff's and Class members' PII in their possession was adequately secured and protected.  Defendant further owed a duty to Plaintiff and Class members to implement processes that would detect a breach of their security systems in a timely manner and to timely act upon warnings and alerts.

56.     Defendant owed a duty to timely disclose the material fact that their computer systems and data security practices were inadequate to safeguard individuals' PII.

57.     Defendant breached these duties by the conduct alleged in the Complaint by, including without limitation, (a) failing to protect the PII; (b) failing

to maintain adequate computer systems and data security practices to safeguard the PII; (c) failing to disclose the material fact that Defendant's computer systems and data security practices were inadequate to safeguard the PII; and (d) failing to disclose in a timely and accurate manner to Plaintiff and members of the Class the material fact of the Experian data breach.

58.    The conduct alleged herein caused Plaintiff and Class members to be exposed to fraud and be harmed as detailed herein.

59.    Plaintiff and Class members were foreseeable victims of Defendant's inadequate data security practices and in fact suffered damages caused by Defendant's breaches of its duties.

### COUNT IV – BREACH OF IMPLIED CONTRACT

60.    Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

61.    When Plaintiff and members of the Class provided their PII to T-Mobile, Plaintiff and members of the Class entered into implied contracts with Defendant Experian pursuant to which it assumed a duty and agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class members that their data had been breached and compromised.

62.    Plaintiff and Class members would not have provided and entrusted their PII to T-Mobile in the absence of such an implied contract between them and Defendant.

23 – CLASS ACTION COMPLAINT

63.    Plaintiff and members of the Class fully performed their obligations under the implied contracts with Defendant.

64.    Defendant breached the implied contracts it made with Plaintiff and Class members by failing to safeguard and protect the PII of Plaintiff and members of the Class and by failing to provide timely and accurate notice to them that their PII was compromised in and as a result of Experian data breach.

65.    The losses and damages sustained by Plaintiff and Class members as described herein were the direct and proximate result of Defendant's breaches of the implied contracts between Defendant and Plaintiff and members of the Class.

**COUNT V – BREACH OF CONTRACT**

66.    Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

67.    Plaintiff and members of the Class are third-party beneficiaries of T-Mobile's contract with Experian to provide credit services in connection with the applications of Plaintiff and members of the Class.

68.    Defendant Experian had a contractual obligation to maintain the security of the PII of Plaintiff and members of the Class, which Defendant recognized as set forth herein.

69.    Defendant breached those contractual obligations by failing to safeguard and protect the PII of Plaintiff and members of the Class and by failing

to provide timely and accurate notice to them that their PII was compromised in and as a result of Experian data breach.

70.     The losses and damages sustained by Plaintiff and Class members as described herein were the direct and proximate result of Defendant's breaches of their contracts.

## COUNT VI – VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,
## CAL. BUS. & PROF. CODE § 17200, *et seq*.

71.     Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

72.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.  Defendant violated (and continues to violate) the UCL through its business acts and practices as set forth herein, and specifically by failing to protect and safeguard the PII entrusted to them by Plaintiff and members of the Class and by failing to timely notify Plaintiff and members of the Class of the Experian data breach.  These business acts and practices were centered in, emanated from and were carried out, effectuated and perfected in the United States and from within the State of California

73.     Plaintiff and all members of the Class were harmed by Defendant's aforementioned unlawful, unfair and fraudulent business acts and practices occurring in the State of California.  As alleged herein, Plaintiff and members of the Class have been victimized by, and have suffered injury in fact and lost money

25 – CLASS ACTION COMPLAINT

or property as a result of, Defendant's conduct associated with their failure to protect and safeguard the PII and their failure to timely notify Plaintiff and members of the Class of the Experian data breach.

74.    Defendant's actions and practices, as alleged in this Complaint, were unfair, deceptive, misleading and likely to deceive the consuming public within the meaning of the UCL.

75.    As set forth herein, Defendant's wrongful actions resulted in harm to consumers that is ongoing.  Defendant's acts constitute violations of the unfair prong of Cal. Bus. & Prof. Code § 17200 *et seq.*

76.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.  As a result of its deception, Defendant has been able to reap unjust revenue and profit.

77.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

78.    Plaintiff, on behalf of himself and all other Class members, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of Defendant's misconduct and injunctive relief in the form of an order prohibiting Defendant from continuing such practices and requiring Defendant to engage in and undertake corrective measures, and all such other and further relief this Court deems appropriate, consistent with Cal. Bus. & Prof. Code § 17203.

**COUNT VII – VIOLATION OF THE OHIO CONSUMER SALES**

**PRACTICES ACT, R.C. 1345.01, *et seq.***

**(brought on behalf of the Ohio Subclass)**

79.     Plaintiff hereby adopts and realleges all the factual allegations in all paragraphs set forth hereinabove as if fully set out herein.

80.     Plaintiff and the Ohio Class Members are residents of Ohio.

81.     The breach of security, unauthorized access, transfer of data and resulting injury to Plaintiff and the Ohio Class resulted from Experian's failure to implement or maintain measures appropriate under the circumstances to protect Plaintiff and Class Members' PII.

82.     Plaintiff and Ohio Class Members reasonably expected that Experian would, and Experian has represented that it does, protect consumers' PII from unlawful or unauthorized access or disclosure.  Experian failed to protect the Plaintiff and Ohio Class Members' PII.

83.     Plaintiff and Ohio Class Members reasonably expected that Experian would, and Experian has represented that it does, employ appropriate measures to safeguard consumers' PII from unlawful or unauthorized access or disclosure. Experian failed to employ appropriate measures to safeguard consumers' PII.

84.     Experian failed to disclose to Plaintiff and Ohio Class Members that it failed to employ appropriate measures to safeguard consumers' PII.

85.    Plaintiff and Ohio Class Members relied on Experian to safeguard their PII as represented.

86.    Experian's misrepresentations constitute unfair, deceptive or unconscionable acts or practices in connection with a consumer transaction under the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.

87.    Plaintiff and Ohio Class Members have been injured and have suffered loss of money or property as a result of Experian's unfair, deceptive or unconscionable acts or practices.

## RELIEF REQUESTED

Plaintiff, on behalf of himself and all others similarly situated, request that the Court enter judgment against Defendant, as follows:

1.    An award to Plaintiff and the Class of compensatory, direct, consequential, statutory, and incidental damages;

2.    Injunctive relief requiring Defendant to implement measures that strengthen their data security protocols and provide for periodic audits of those protocols;

3.    An award of attorneys' fees, costs, and expenses, as provided by law, or equity, or as otherwise available;

4.    An award of pre-judgment and post-judgment interest, as provided by law or equity; and

///

5.      Such other or further relief as may be appropriate under the circumstances.

Dated:  October 7, 2015                     Respectfully submitted,


/s/ WYLIE AITKEN
WYLIE AITKEN

**AITKEN AITKEN & COHN**
Wylie Aitken
3 MacArthur Pl #800
Santa Ana, CA 92707
Phone:  (714) 434-1424
Fax: (714) 434-3600
wylie@aitkenlaw.com

Stephen R. Basser
Samuel M. Ward
BARRACK, RODOS & BACINE
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800
Facsimile:  (619) 230-1874
sbasser@barrack.com
sward@barrack.com

John G. Emerson
EMERSON SCOTT, LLP
830 Apollo Lane
Houston, TX 77058
Telephone: (281) 488-8854
Facsimile:  (281) 488-8867
jemerson@emersonfirm.com

*Attorneys for Plaintiff and proposed class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  October 7, 2015                                Respectfully submitted,


                                                        /s/ WYLIE AITKEN
                                                        WYLIE AITKEN

                                                        **AITKEN AITKEN &
                                                        COHN**
                                                        Wylie Aitken
                                                        3 MacArthur Pl #800
                                                        Santa Ana, CA 92707
                                                        Phone:  (714) 434-1424
                                                        Fax: (714) 434-3600
                                                        wylie@aitkenlaw.com

                                                        **BARRACK, RODOS & BACINE**
                                                        Stephen R. Basser
                                                        Samuel M. Ward
                                                        600 West Broadway, Suite 900
                                                        San Diego, CA 92101
                                                        Telephone: (619) 230-0800
                                                        Facsimile:  (619) 230-1874
                                                        sbasser@barrack.com
                                                        sward@barrack.com

                                                        **EMERSON SCOTT, LLP**
                                                        John G. Emerson
                                                        830 Apollo Lane
                                                        Houston, TX 77058
                                                        Telephone: (281) 488-8854
                                                        Facsimile:  (281) 488-8867
                                                        jemerson@emersonfirm.com

                                                        *Attorneys for Plaintiff and proposed
                                                        class*

30 – CLASS ACTION COMPLAINT